## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

DARIUS L. HARRIS,                              )
                                               )
                        Plaintiff,             )
                                               )
        vs.                                    )          Civil Action No. 3:25-cv-00019
                                               )          Judge D. Brooks Smith
GARRETT TRENT, *et al.*,                       )
                                               )
                        Defendant.             )

## MEMORANDUM and ORDER OF COURT

Plaintiff Darius Harris ("Harris"), proceeding *pro se*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983 against Altoona Police Department Officer Garrett Trent ("Trent"). Harris asserts a slew of constitutional violations allegedly arising out of a 2023 drug investigation in Altoona, PA that ultimately resulted in Harris's prosecution, the negotiation of a guilty plea, and his sentencing in the Blair County Court of Common Pleas. Presently before me is Trent's Motion to Dismiss Harris's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Motion is granted and the complaint against Trent is dismissed in its entirety.

## I.    Background

In early 2023, the Altoona Police Department began investigating Harris for suspected drug distribution. (ECF 17-4 at 3). As reflected in the materials

1

incorporated into Harris's pleading,[1] investigators worked with a confidential informant ("CI") who advised them that Harris was selling heroin, fentanyl and methamphetamine. (*Id.*; ECF 17-2).  The CI also provided a telephone number that could be used to arrange controlled purchases. (*Id.*). Officers—including defendants Trent and Andrew Crist ("Crist")—then conducted a series of controlled buys during which they provided the CI with recorded task-force funds to use in making the buys. (ECF 17-4 at 3–11). They also observed the CI make contact with Harris, and later recovered narcotics from the CI's person. (*Id.*)

Those controlled purchases culminated in an application for a warrant to search Harris's residence. (*Id.* at 1). Trent's affidavit of probable cause in support of the warrant described multiple controlled buys and the officers' observations tying Harris's drug activity to his residence. (*Id.* at 3–11). Officers later executed the search warrant and recovered, among other things, heroin, fentanyl

---

[1] The operative pleading is Harris's Amended Complaint, filed July 23, 2025. (ECF 21). In support of his Motion for Leave to Amend his original complaint (ECF 14), Harris submitted a supplement (ECF 17) containing several exhibits including the Altoona Police Department's application for a search warrant to search his residence (ECF 17-4) and the incident report from the execution of that warrant (ECF 17-5). Because the Amended Complaint contains almost no factual allegations, most of the following background is drawn from those materials, which may be properly considered on a motion to dismiss. *See Handal v. Innovative Indus. Props., Inc.,* 157 F.4th 279, 292 (3d Cir. 2025) (a district court ruling on a motion to dismiss may consider, in addition to the complaint, "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" (citation omitted)).

methamphetamine, firearms, currency, and drug paraphernalia. (ECF 17-5 at 1–4).
They also recovered recorded task-force funds from the controlled purchases. (*Id*.).

Harris was charged with a variety of offenses[2] in the Court of Common Pleas
of Blair County based on the controlled buys and the ensuing residential search.
(ECF 17-12 at 1–3). He ultimately resolved those charges through a negotiated guilty
plea and was sentenced on May 2, 2025.[3]

Harris did not file a direct appeal from the judgment of sentence. *Id*. While
his state prosecution was still pending, Harris—proceeding *pro se*—filed this § 1983
action against Trent. (ECF 6). Later, on July 23, 2025, Harris filed the Amended
Complaint, which is, for our purposes, the operative pleading and which named
additional defendants Crist, District Attorney Pete Weeks and the Blair County Court
of Common Pleas. (ECF 21). The Amended Complaint asserted an assortment of
constitutional theories, including: (1) a Fourth Amendment claim based on alleged

---

[2] These offenses included nine counts of Possession with Intent to Manufacture or
Deliver (F), 35 P.S. § 780-113(a)(30); six counts of Simple Possession (M), 35 P.S.
§ 780-113(a)(30); four counts of Criminal Use of Communication Facility (F3), 18
Pa. C.S. § 7512(a); one count of Use or Possession of Drug Paraphernalia, 35 P.S. §
780-113(a)(32); one count of Criminal Conspiracy to commit Possession with Intent
to Deliver or Manufacture (F), 18 Pa. C.S. § 903; one count of Corruption of Minors
(M1), 18 Pa. C.S. § 6301(a)(1)(i); and one count of Endangering Welfare of Children
(M1), 18 Pa. C.S. § 4304(a). (ECF 17-12 at 1–3).
[3] Blair Cnty. Ct. Com. Pl., *Court Summary*, Commonwealth v. Harris, Darius L., No.
CP-07-CR-0000796-2023 (printed Feb. 10, 2026), available at
https://ujsportal.pacourts.us/Report/CpCourtSummary?docketNumber=CP-07-CR-0000796-2023&dnh=X1hBUz4PQEZ5XKFpNgZj2Q%3D%3D.

noncompliance with Pennsylvania's knock-and-announce rule; (2) a Fourth Amendment challenge to the truthfulness and completeness of the warrant application; (3) a due process theory premised on the alleged failure to record the search pursuant to a body-worn camera policy; (4) a Fifth/Sixth/Fourteenth Amendment theory premised on the alleged failure to record a police interview of the CI; (5) an equal-protection/due-process theory premised on officers' failure to arrest Harris during a controlled buy at which his son was present; and (6) a Fourth Amendment claim grounded in the purportedly unlawful interception of communications under Pennsylvania's wiretap statute. (*Id*.).

On August 6, 2025, Trent moved to dismiss the Amended Complaint under Rule 12(b)(6) (ECF 25) and filed a supporting brief (ECF 26). Harris opposed the motion (ECF 27), which is now ripe for disposition.[4]

## II.    Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In resolving such a motion, a district court must accept all well-pled factual allegations as true and view them in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). Indeed,

---

[4] This Court has subject matter jurisdiction over Harris's claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

a district court must do so "even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Id.* at 213 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, it need not accept as true "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted); *see also Pa. Prison Soc. v. Cortes*, 622 F.3d 215, 233 (3d Cir. 2010) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. That standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A plaintiff must plead sufficient factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Generally, a district court must afford a plaintiff proceeding *pro se* some "procedural flexibility" when reviewing and interpreting their pleadings, especially "when dealing with imprisoned pro se litigants . . . [who] often lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013). I must, therefore,

5

"liberally construe" Harris's pleadings. *Higgs v. Att'y Gen.,* 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Nonetheless, even though he is proceeding *pro se*, Harris "still must allege sufficient facts in [his] complaint[] to support a claim" and I may not conjure up missing factual allegations if he fails to do so. *Mala,* 704 F.3d at 245; *see also Pliler v. Ford,* 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants.").

## III.   Analysis

As an initial matter, Harris's Fourteenth Amendment claim[5] which alleges that Trent "allow[ed] a transaction to be conducted in the presence of a child, without making an arrest" (Claim 5) must be dismissed for lack of standing.[6] (ECF 21 at 10).[7] This claim arises from one of the several controlled drug purchases arranged

---

[5] Although Harris labels this claim as a violation of his "Equal Protection Rights," it fails to implicate the Equal Protection Clause. Instead, it is more appropriately framed as a substantive due process claim. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 194–95 (1989) (characterizing a claim that the state "was categorically obligated to protect [a minor]" from abuse from his father as "one invoking the substantive . . . component of the Due Process Clause").

[6] "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000)

[7] It is unclear whether Harris intends to raise this claim on his own behalf or on behalf of his minor child. To the extent Harris seeks to sue on behalf of his child, he

by Trent and other officers, and to which Harris brought his 12-year-old son, JH. (ECF 17-4 at 6). While the exchange between Harris and the CI took place in a vehicle, JH "stood next to the vehicle on the sidewalk within approximately 10 feet." (*Id.*).[8] Rather than immediately arresting Harris, officers continued their investigation and conducted three additional controlled drug purchases from him. (*Id.* at 7–11).

Even if that failure to act somehow suggests a constitutional violation,[9] Harris does not allege that JH suffered any injury-in-fact from the alleged violation. Indeed, the claim itself presupposes that no injury occurred. (ECF 21 at 10 (alleging that Trent's failure to arrest "*could* have endangered the welfare of a child" (emphasis added))). And even if Harris could plausibly allege an injury to JH, he lacks standing

---

is prohibited from doing so because he is appearing *pro se* and is not an attorney. *See Osei–Afriyie v. Medical College of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("[A] non-lawyer appearing *pro se* [is] not entitled to play the role of attorney for his children in federal court.").

[8] That conduct formed the basis for the charges against Harris of Endangering the Welfare of Children, 18 Pa. C.S. § 4304(a) and Corruption of Minors, 18 Pa. C.S. § 6301(a)(1)(i). (ECF 17-12, at 2).

[9] As a general matter, an officer's failure to arrest or otherwise intervene does not, without more, give rise to constitutional liability. *See DeShaney* 489 U.S. at 197–201 (1989) (explaining that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause" even where the State was aware of the danger). Even so, because Harris lacks standing, I must dismiss without prejudice. *See Cottrell v. Alcon Lab'ys,* 874 F.3d 154, 164 n.7 (3d Cir. 2017) ("Because the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper."). I am skeptical, however, about the viability of this claim even if properly repleaded.

to seek relief on that basis because "[i]njuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing." *Howard v. Chester Cnty. Off. of Juv. Prob. & Parole,* 365 F. Supp. 3d 562, 571 (E.D. Pa. 2019), *aff'd*, No. 19-1697, 2019 WL 13131142 (3d Cir. Nov. 27, 2019) (citation omitted); *see also Hannah v. City of Dover,* 152 F. App'x 114, 116–17 (3d Cir. 2005) (holding that a mother could not assert her son's Fourth Amendment or Equal Protection rights because she "had not been the recipient" of the injury). Accordingly, Claim 5 of the Amended Complaint will be dismissed for lack of standing.

## A. Abstention

Trent urges me to dismiss the Amended Complaint in its entirety pursuant to the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). That doctrine "operates as an exception to the general rule that federal courts must decide cases within their limited jurisdiction," *Borowski,* 68 F.4th at 849, and "restrict[s] federal court interference with ongoing state judicial proceedings," *PDX N. Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020). For *Younger* abstention to apply, three conditions must be met: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir.1989).

As to the first prong, Trent argues that *Younger* applies "[b]ecause Plaintiff's criminal charges were pending at the time he initiated this action." ECF 26 at 10. But the "ongoing state proceeding" requirement is assessed at the time a district court is considering a motion, not when the federal complaint was filed. *See, e.g., Martin v. City of Reading,* No. 12-CV-03665, 2013 WL 5429358, at *7 (E.D. Pa. Sept. 30, 2013) (holding that "the first requirement for Younger abstention is not satisfied' where "*at this time*, plaintiff's state court criminal proceedings are no longer ongoing." (emphasis added)); *Klayman v. Porter,* 104 F.4th 298, 312 (D.C. Cir. 2024) (holding that *Younger* did not apply where there was no "relevant pending state proceeding *at the time of the district court's decision*." (emphasis added)). Thus, if the state criminal matter has concluded—including sentencing and expiration of the time for direct appeal—the first prong of *Younger* is not met.[10]

---

[10] *See, e.g., Martin,* 2013 WL 5429358, at *7 (holding that *Younger* did not apply where plaintiff had been sentenced and "did not file a direct appeal concerning his state court sentence"); *Silva v. Farrish,* 47 F.4th 78, 89 (2d Cir. 2022) (holding that *Younger* did not apply where "there was an ongoing state prosecution when [plaintiff] filed his federal complaint, [but] that proceeding has now ended."); *Tedesco v. Monroe Cnty.,* No. 3:17-CV-01282, 2017 WL 4347524, at *7 (M.D. Pa. Sept. 29, 2017) (holding that "Plaintiff's case [was] no longer 'ongoing' in state court" where plaintiff was convicted and sentenced and exhausted his direct appeals).

That is the situation here. Harris was sentenced on May 2, 2025, and did not file a direct appeal.[11] His window to do so has long passed.[12] Therefore, the first requirement for *Younger* abstention has not been satisfied, and Trent's motion to dismiss is denied to the extent that it relies upon *Younger*.[13]

## B. Failure to Record

Turning to the merits of Harris's claims, he asserts two claims based on Trent's alleged failure to record certain investigative activities. First, Harris claims that his Fourteenth Amendment due process rights were violated because Trent failed to record the search of his home pursuant to the Altoona Police Department's "body-worn camera policy."[14] (ECF 21 at 7–8) (Claim 3). Second, Harris contends that

---

[11] Blair Cnty. Ct. Com. Pl., *Court Summary*, Commonwealth v. Harris, Darius L., No. CP-07-CR-0000796-2023 (printed Feb. 10, 2026), available at https://ujsportal.pacourts.us/Report/CpCourtSummary?docketNumber=CP-07-CR-0000796-2023&dnh=X1hBUz4PQEZ5XKFpNgZj2Q%3D%3D. In evaluating a Motion to Dismiss, I may consider public records, such as a publicly available criminal history. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

[12] Rule 903 of the Pennsylvania Rules of Appellate Procedure governs the time frame for filing a direct appeal and provides: "In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court." Pa.R.App.P. 903(c)(3).

[13] Even if *Younger* abstention applied, dismissal would not be the proper remedy. Where, as here, a plaintiff seeks damages, "a federal court cannot dismiss the suit but may, in the exercise of its discretion, stay the case for the pendency of the state proceedings." *See Borowski v. Kean Univ.,* 68 F.4th 844, 850 (3d Cir. 2023).

[14] It is unclear whether the Altoona Police Department even has a formal body-worn camera policy. The City's open records page describes procedures for requesting "audio or video recording[s] made by a law enforcement agency," but it does not

Trent violated his "Fifth, Sixth and Fourteenth Amendment Rights" by "fail[ing] to record the interrogation of a witness being used as a confidential informant." (ECF 21 at 11) (Claim 4).[15] Neither of these theories implicates a right secured by the Constitution or federal law and thus cannot form the basis for a claim under § 1983. *See West v. Atkins,* 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[.]")

First, even assuming a formal body-worn camera policy existed, and even assuming Trent violated it, there is no freestanding federal constitutional right— under the Fourteenth Amendment or otherwise—to have police activity recorded. *See Wooden v. City of Philadelphia,* No. CV 19-1054, 2022 WL 17724423, at *4 (E.D. Pa. Dec. 15, 2022) (collecting cases and noting that "[c]ourts that have addressed the issue have universally rejected the theory that a failure to provide or conduct recording of certain law enforcement activities" constitutes a constitutional

---

itself link a formal policy document nor does it state that one exists. *Right-to-Know Law,* CITY OF ALTOONA, https://www.altoonapa.gov/rtkl (last visited Feb. 11, 2026).
[15] According to Officer Crist's Probable Cause Affidavit for Interception of Oral Communication, on February 17, 2023, Trent interviewed the CI at a secure location. ECF 17-3 at ¶ 6. During that interview, the CI stated that they "could purchase heroin/fentanyl and Crystl methamphetamine from a black male known . . . as 'Darrius,'" and the CI provided a phone number to arrange the purchase of controlled substances. *Id.* After the interview, Trent identified "Darius" as Harris and showed the CI a photo of him, which the CI confirmed matched the person the CI was referring to. *Id.* at ¶ 7.

violation); *see also Graham v. Rowe,* No. CV 19-6757, 2019 WL 3059801, at \*4 (D.N.J. July 10, 2019) ("There is no constitutional right to be free from an arrest that is not recorded by a camera[.]"). Likewise, there is no due process right to have witness interviews recorded.[16] And to the extent Harris's claims are grounded in the Confrontation Clause right to confront the witnesses against him, that right is not implicated here, where no trial was held. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (holding that the Confrontation Clause "is not a constitutionally compelled rule of pretrial discovery" and emphasizing that the right of confrontation is "a trial right" guaranteeing only an opportunity for effective cross-examination); *California v. Green,* 399 U.S. 149 (1970) ("[I]t is this literal right to 'confront' the witness *at the time of trial* that forms the core of the values furthered by the Confrontation Clause." (emphasis added)).

At most, Harris's claims of a "failure to record" allege noncompliance with internal policies or preferred investigative practices. But § 1983 does not constitutionalize such policies or practices, and the Constitution does not independently require officers to create recordings of searches, seizures, or witness

---

[16] *Accord United States v. Tykarsky*, 446 F.3d 458, 477 (3d Cir. 2006) ("Whatever the merits of the policy arguments in favor of requiring the recording of [custodial] interrogations may be, it is clear that such recording is not mandated by the United States Constitution."); *United States v. Thurman*, 889 F.3d 356, 366–67 (7th Cir. 2018) (holding that "the Constitution certainly does not mandate" a "policy of recording all custodial interrogations").

interviews. Although I must construe *pro se* allegations liberally, I may not invent constitutional rights based on nothing more than policy arguments.

To the extent Harris is not merely alleging that Trent failed to create recordings, but that recordings were, in fact, created and later withheld or not preserved, his claim sounds in *Brady v. Maryland*, 373 U.S. 83 (1963) or *Arizona v. Youngblood,* 488 U.S. 51 (1988). However, Harris does not plead facts plausibly supporting either claim. He does not identify the existence of any specific recording, nor does he plausibly allege that any such recording contained materially exculpatory information that was suppressed by the prosecution. That is the stuff of a *Brady* claim. *See United States v. Risha,* 445 F.3d 298, 303 (3d Cir. 2006) ("To establish a *Brady* violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment."). Nor does he allege facts suggesting bad-faith destruction or loss of potentially useful evidence, as a *Youngblood* claim would require. *See United States v. Griffith,* No. 23-2713, 2024 WL 5053426, at *2 (3d Cir. Dec. 10, 2024) ("In order to establish that [plaintiff's] due process rights were violated, he must prove (1) the video was potentially exculpatory and (2) the [defendant] acted in bad faith in failing to preserve the video." (citing *Youngblood*, 488 U.S. at 58)). Ordinarily,

the proper course would be to dismiss these claims without prejudice and permit amendment.[17]

At all events, as discussed below, these claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994).

## C. Heck v. Humphrey

Although Trent does not explicitly cite it, he argues that all of Harris's claims are barred by the "favorable termination" rule established in *Heck.* There, the Supreme Court held that a prisoner may not bring a claim for damages under § 1983 where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.[18] That holding was driven by "concerns for finality and consistency," as well as "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id*., at 486. However, for *Heck* to apply, it must be the case that

---

[17] "[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004) *abrogated on other grounds by Iqbal*, 556 U.S. at 678.

[18] To demonstrate that a conviction has already been invalidated, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*., at 486–87

success on a § 1983 claim would *necessarily* imply the invalidity of the state conviction or sentence. Indeed, the two must be "logically contradictory." *Ramos-Ramirez v. Berwick Borough,* 819 F. App'x 103, 106 (3d Cir. 2020) (internal quotation marks and citation omitted). As the Court explained in *Heck*, if the plaintiff's action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." 512 U.S. at 487.

Here, it is beyond dispute that Harris's conviction has not been invalidated or otherwise called into question.[19] Thus, I must determine, for each claim he asserts, whether its success would imply the invalidity of his conviction. *See Shields,* 2023 WL 8005296, at *3 (noting that this inquiry calls for "a case-by-case determination" (citing *Bronowicz v. Allegheny Cnty.*, 804 F.3d 338, 346 (3d Cir. 2015))).

### 1. Failure to Record Claims

As explained above, to the extent Harris intends to allege that recordings were created but withheld (a *Brady* theory) or later lost or destroyed (a *Youngblood*

---

[19] That Harris was convicted pursuant to a negotiated plea agreement, rather than after a trial, does not alter the *Heck* analysis. *See Gilles v. Davis,* 427 F.3d 197, 209 (3d Cir. 2005) (holding that "a guilty plea . . . [is] sufficient to bar a subsequent § 1983 claim" under *Heck*); *Curry v. Yachera,* 835 F.3d 373, 378–79 (3d Cir. 2016) (applying *Heck* to a *nolo contendere* plea even though such pleas are not treated as admissions of guilt under Pennsylvania law); *Shields v. Wiegand*, No. CV 20-2999, 2023 WL 8005296, at *4 (E.D. Pa. Nov. 17, 2023) (applying *Heck* in the context of a guilty plea).

theory), those claims cannot proceed because success on them would necessarily call into question the validity of his still-standing conviction and sentence. Because a *Brady* claim requires proof that the undisclosed evidence was material to the conviction or sentence,[20] "a meritorious *Brady* claim, by definition, implies the invalidity of the attendant criminal conviction." *Dukes v. Pappas*, 405 F. App'x 666, 668–69 (3d Cir. 2010); *see also Walsh v. Popp,* 726 F. App'x 110, 111 (3d Cir. 2018) (a "*Brady* claim implies the invalidity of [an underlying] conviction"). The same is true of a *Youngblood* claim. Because the alleged bad-faith failure to preserve potentially exculpatory evidence goes to the constitutional reliability of the conviction, success on such a claim likewise would necessarily imply invalidity. *See Miller v. Commonwealth of Pennsylvania,* 588 F. App'x 96, 97 (3d Cir. 2014) (*Heck* barred a claim for "fail[ure] to preserve exculpatory evidence"); *Gravely v. Speranza,* 219 F. App'x 213, 215 (3d Cir. 2007) ("We agree . . . that [the] claim of failure to preserve evidence is barred by *Heck*[.]"); *James v. Atlanta City Police Dep't,* No. 05–3616, 2006 WL 454359, at *4 (D.N.J. Feb. 21, 2006) (claims for bad faith failure to preserve evidence under *Youngblood* were barred by *Heck*).

---

[20] *See Risha,* 445 F.3d at 303.

Accordingly, I will dismiss these claims without prejudice, but without leave to amend.[21]

## 2. Fourth Amendment Claims

Harris next asserts three Fourth Amendment claims. First, he contends that the search of his home was unreasonable due to officers' failure to comply with Pennsylvania's "knock and announce" rule, as set forth in Pennsylvania Rule of Criminal Procedure 2007.[22] (ECF 21 at 6) (Claim 1). Second, he alleges that Trent made deliberate misstatements and omissions in his application for a search warrant,

---

[21] *See Curry*, 835 F.3d at 379 (explaining that dismissal on *Heck* grounds should be without prejudice because a plaintiff may renew the claims if he later succeeds in invalidating the conviction); *Garrett v. United States*, 771 F. App'x 139, 141 (3d Cir. 2019) (affirming dismissal under *Heck* "without prejudice and without leave to amend").

[22] Rule 2007 provides that:

> (a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.
>
> (b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.
>
> (c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa. R. Crim. P. 2007; *Com. v. Chambers*, 598 A.2d 539, 541 (Pa. 1991). An entry which violates that rule "is also an unreasonable entry under the Fourth Amendment." *Com. v. Rudisill,* 622 A.2d 397, 399 (Pa. Super. 1993) (citing *Com. v. Means,* 614 A.2d 220, 222 (Pa. 1992)).

which were necessary to the magistrate's finding of probable cause. *Id*. at 6–7 (Claim 2). Third, Harris claims that Trent conducted an unauthorized wiretap in violation of 18 Pa. C.S. § 5704.[23] *Id*. at 10–11 (Claim 6).[24]

Success on any of these claims would not *necessarily* imply the invalidity of Harris's conviction. Although the typical remedy for an unlawful search is the exclusion of evidence obtained as a result of that search, a conviction and sentence can still stand even if predicated on such evidence. Indeed, "[b]ecause of doctrines like independent source and inevitable discovery . . . and especially harmless error," a suit for damages attributable to an allegedly unreasonable search may lie because "such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. at 487 n.7; *see also Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police,* 411 F.3d 427,

---

[23] Section 5704 sets forth exceptions to Pennsylvania's general prohibition on the interception and disclosure of wire, electronic, or oral communications. *See* 18 Pa. C.S. § 5703. As relevant here, it permits law enforcement to intercept communications involving suspected criminal activities when "one of the parties to the communication has given prior consent to such interception." *Id*. at § 5704(ii). And where an otherwise lawful oral interception "will take place in the home of a nonconsenting party," officers must also "obtain from the president judge . . . of a court of common pleas, [an order] authorizing such in-home interception, based upon an affidavit by an investigative or law enforcement officer that establishes probable cause." *Id*. at § 5704(iv).

[24] Although Harris labels this claim as "Fourteenth Amendment due process," the substance of the claim is an allegation that law enforcement intercepted communications without lawful authorization—*i.e.*, an allegedly unreasonable search governed by the Fourth Amendment.

439 (3d Cir. 2005) ("Although a successful Fourth Amendment civil claim might suggest that certain evidence should have been excluded . . . that issue will never be reached in the civil context and therefore, the successful civil claim will not necessarily imply the invalidity of the underlying criminal conviction."), *overruled on other grounds by Dique v. N.J. State Police,* 603 F.3d 181, 182 (3d Cir. 2010).[25] Accordingly, Harris's Fourth Amendment claims are not barred by *Heck*, and I will address each of them in turn.

## IV.  Fourth Amendment Claims

### A. Knock and Announce

Harris's "knock and announce" claim is pled in entirely conclusory terms. Apart from generally citing two cases and recounting their outcomes, the Amended Complaint offers only the bare allegation that the "Altoona Police Department along with Agent Crist and other law enforcement conducted an execution of [the search warrant]" at Harris's home. (ECF 21 at 4). Harris does not allege that officers failed to announce their identity and purpose or did not wait a reasonable amount of time

---

[25] To be sure, certain Fourth Amendment § 1983 claims are barred by *Heck* where success "would actually 'negate an element of the offense of which [the plaintiff] has been convicted'" thereby "undermin[ing] the *charge* under which the defendant was convicted, as contrasted with merely undermining *evidence* supporting the underlying conviction." *Id.* (first quotation from Heck, 512 U.S. at 487 n.6) (alteration in original). That is simply not the case here.

after such announcement before entering. *See* Pa. R. Crim. P. 2007. To the contrary, the incident report describing the execution of the search warrant, which Harris cites and relies upon, states that officers "began the knock and announce procedures" before entry. (ECF 17-5 at 6).

Harris's claim also fails for an independent reason: he does not allege that Trent was personally involved in any purported violation of Rule 2007, and if he was, how. *See DiMarco v. Borough of St. Clair,* 511 F. Supp. 3d 545, 552 (M.D. Pa. 2021) ("For a defendant to be held liable for violation of a plaintiff's civil rights, the defendant must have personal involvement in the alleged wrongs.). Indeed, the incident report reflects that Trent was merely "assigned to hold the perimeter" surrounding the house during the search and did so until he was "advised that both houses were secure." (ECF 17-5 at 4).

Accordingly, I will dismiss this claim without prejudice. Harris may amend only if he can plead nonconclusory facts plausibly establishing (1) a Rule 2007 violation during execution of the warrant, and (2) Trent's personal involvement in that violation.

### B. Warrant Application

Next, Harris alleges that, in applying for the warrant to search his house, Trent falsely stated that he had previously "dealt with Harris in that house and in that area on multiple occasions and know[s] him to be affiliated with drug distribution in that

20

area." (ECF 21 at 6–7; ECF 17-4 at 3). Harris also alleges that Trent omitted information about the CI's criminal history, pending charges against the CI and the CI's incentive to cooperate. (ECF 21 at 6–7).

Where, as here, a neutral magistrate found probable cause in connection with a warrant application, a plaintiff may establish a Fourth Amendment violation by showing that "(1) the police officer knowingly and deliberately, or with a reckless disregard for the truth, made statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material or necessary to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks and citation omitted). Materiality is assessed by "excis[ing] the offending inaccuracies," adding any material omissions, and then asking whether the "corrected" affidavit would still establish probable cause. *Reedy v. Evanson,* 615 F.3d 197, 213 (3d Cir. 2010). Probable cause to search exists where, considering the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Stearn,* 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

Harris does not plead any facts supporting his conclusory assertion that Trent's statement was false, much less that he made it knowingly and deliberately or with a reckless disregard for the truth. But even assuming that Harris could satisfy the first

*Wilson* prong, his claim still fails because the statement in question was not material or necessary to the finding of probable cause. Even with the challenged statement removed, Trent's affidavit of probable cause describes multiple controlled purchases[26] in which officers searched the CI and provided the CI with buy money, observed the CI enter Harris's house with Harris present, and later recovered illegal drugs from the CI's person. *See* ECF 17-4 at 4 (first controlled buy); *id*. at 7 (third controlled buy); *id*. at 10 (fifth controlled buy). Those allegations, standing alone, are sufficient to establish a "fair probability" that illicit drugs or narcotics would be found at Harris's residence.[27] And even if the controlled buys had not occurred inside the residence itself, there would still have been probable cause to search it. *See United States v. Burton,* 288 F.3d 91, 104 (3d Cir. 2002) ("It is reasonable to infer that a person involved in drug dealing . . . would store evidence of that dealing at his home." (citation omitted)); *United States v. Whitner,* 219 F.3d 289, 297 (3d Cir. 2000) (collecting cases and agreeing that "evidence of involvement in the drug trade is likely to be found where the dealers reside.").

---

[26] The warrant application details a total of five controlled buys, two of which did not occur within Harris's home. *See* ECF 17-4 at 5–6 (second controlled buy occurring in a vehicle near Harris's house); *id*. at 8 (fourth controlled buy occurring at another residence, but with the drugs being sourced from Harris's house).

[27] *See, e.g., United States v. Carney*, 717 F. App'x 185, 186 (3d Cir. 2018) (holding that there was a "substantial basis" to grant a search warrant where "within two days prior to the search warrant request, [a] CI performed a controlled drug buy at [defendant's] residence" and "entered the residence with money provided by the [police] and left with a baggie of cocaine.")

Nor does Harris state a claim based on the alleged omission of the CI's reliability and criminal history. Although such information may be material in some cases,[28] it is not material where, as here, officers personally observed the controlled buys such that the probable cause determination did not rest solely on an informant's uncorroborated narrative. *See United States v. DeCruz,* 644 F. App'x 189, 191 (3d Cir. 2016) (holding that "the omission of [a] CI's reliability and criminal history were not material to the finding of probable cause" where "the probable cause determination . . . depended upon the police officer's observations and not the CI's report of what transpired"); *United States v. Dixon*, 123 F. Supp. 2d 278 (E.D. Pa. 2000) (finding probable cause was met where a warrant application lacked detailed informant-reliability information, but a controlled buy observed by officers supplied an independent basis to credit the CI's statement that they bought drugs in the house).

Accordingly, Harris fails to plead a plausible Fourth Amendment violation based on the warrant application, and this claim will be dismissed with prejudice.[29]

---

[28] *See, e.g., Stearn,* 597 F.3d at 555 (noting that an "informant's 'veracity' and 'reliability'" are typically relevant to a finding of probable cause that relies "primarily or in part upon the statements" of that informant (quoting *Illinois v. Gates,* 462 U.S. 213, 230 (1983))).

[29] Dismissal with prejudice is appropriate where amendment would be inequitable or futile. *Alston,* 363 F.3d at 235.

### C. Unlawful Wiretap

Finally, Harris's "unlawful wiretap" claim fails on its own terms. He alleges that the CI did not consent to recording their communications with him until February 23, 2023, "therefore making the recording of the controlled purchase [on] February 21, 2023 illegal."[30] But the document Harris attached and relies upon—Crist's Probable Cause Affidavit for Interception of Oral Communication—does not describe any recording on February 21. *See* ECF 17-3 at ¶ 8. It states only that the CI "placed a phone call in the presence of [] Trent and contacted [Harris]." *Id*. That recitation of an event was not the same thing as electronic interception or recording.

Crist's affidavit does describe a recorded call on February 28, 2023.[31] *Id*. But by that point the CI had executed a formal "Memorandum of Consent," so the recording was therefore lawful. *See* 18 Pa. C.S. § 5704(ii) (stating that it is not unlawful for a law enforcement officer to intercept communications involving suspected criminal activities so long as "one of the parties to the communication has given prior consent to such interception."). On the facts alleged, then, Harris had not plausibly pleaded any unlawful interception under Pennsylvania law.

---

[30] Warrantless electronic recording of a private telephone conversation without the consent of either party is generally a violation of the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 358 (1967)

[31] The call was actually recorded by another officer (Cpl. Nixon), not Trent, further removing Trent from any alleged unlawful activity.

At all events, even if Harris could plausibly allege that Trent recorded the February 21 call before the CI executed a written consent form, that would still not establish a Fourth Amendment violation. When one party to a conversation consents to law enforcement's monitoring or recording, there is no Fourth Amendment "search" in the constitutional sense. *See United States v. White*, 401 U.S. 745, 749–50 (1971). Nor does constitutional consent require formality. Consent is addressed through application of a totality of the circumstances. *See United States v. Price,* 558 F.3d 270, 278–79 (3d Cir. 2009). The absence of a written consent form, standing alone, does not render consent involuntary. *Id*. Here, absent any evidence or allegations of coercion, the CI's active cooperation with law enforcement and placement of the call "in the presence" of Trent demonstrates that the CI's consent was voluntary. Harris's "unlawful wiretap" claim will therefore be dismissed with prejudice.

Accordingly, the following order is entered:

## ORDER

AND NOW, this 2nd day of March, 2026, for the reasons set forth herein, IT IS ORDERED that Defendant Garrett Trent's MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 25) is GRANTED as follows:

- Claim 1 (4th amendment violation as to knock and enter) is dismissed without prejudice and with leave to amend;

- Claim 2 (4th amendment violation warrant application) is dismissed with prejudice;

- Claim 3 (failure to record with body cam) is dismissed without prejudice and without leave to amend;

- Claim 4 (failure to record confidential informant) is dismissed without prejudice and without leave to amend;

- Claim 5 (4th amendment as to child) is dismissed without prejudice; and

- Claim 6 (14th amendment wire tap) is dismissed with prejudice.

As to Claim 1, which is the only claim dismissed with leave to amend, Harris may file an amended complaint on as to Claim 1 which must cure the defects as indicated in this opinion. If Harris chooses to file an amended complaint as to Claim 1, it must be filed on or before April 1, 2026. Failure to do so may result in dismissal with prejudice.

IT IS FURTHER ORDERED that Harris shall effectuate service of the Amended Complaint and all service documents on Defendants District Attorney Pete Weeks, Agent Andrew Crist, and Blair County Court of Common Pleas on or before April 1, 2026. Failure to do so may result in dismissal with prejudice.

/s/D. Brooks Smith
_____

D. Brooks Smith
United States Circuit Judge

26

Sitting by Designation